UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WENDY TUTTLE, | Case No. 1:20-cv-13013 |
| Plaintiff, | Paul D. Borman<br>United States District Judge |
| v. | |
| METROPOLITAN LIFE INSURANCE COMPANY, | Patricia T. Morris<br>United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**OPINION AND ORDER**
**1) ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE MORRIS'S MARCH 22, 2022 REPORT AND RECOMMENDATION (ECF No. 38);**
**2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 32); AND**
**3) GRANTING DEFENDANT'S MOTION TO AFFIRM ITS ADMINISTRATIVE DECISION (ECF No. 31)**

**I. PROCEDURAL POSTURE**

Plaintiff Wendy Tuttle brings this lawsuit with regard to a life insurance plan held by her deceased husband, William J. Tuttle, to which she was the beneficiary. (ECF No. 1-2, PageID 17.)

On March 22, 2022, Magistrate Judge Patricia T. Morris issued a Report and Recommendation ("R&R") on Tuttle's Motion for Summary Judgment (ECF No. 32) and Defendant Metropolitan Life Insurance Company's Motion to Affirm Its

1

Administrative Decision (ECF No. 31). (ECF No. 38.) The R&R recommended that this Court deny both motions. (ECF No. 38, PageID 1356.)

Both parties filed Objections on April 5, 2022 (ECF Nos. 49 and 40) and Responses to their counter-party's Objections on April 19, 2022 (ECF Nos. 41 and 42.)

## II. STANDARDS OF REVIEW

***Defendant's benefits determination is reviewed under the arbitrary and capricious standard.***

As the R&R explained:

> "'The arbitrary and capricious standard is the least demanding form of judicial review of an administrative action.'" *Kennard* [*v. Means Indus., Inc.*, No. 11-cv-15079], 2015 WL 4094611, at *5 [(E.D. Mich. July 7, 2015)], quoting *Smith v. Continental Cas. Co.*, 459 F.3d 253, 259 (6th Cir. 2006). "The plan administrator's decision will be upheld if it is the result of a deliberate, principled reasoning process and is rational in light of the plan's provisions." *Kennard*, 2015 WL 4094611, at *5 (citing *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007)); *see also Muhammad v. Ford Motor Co.*, No. 11-12694, 2012 WL 95298, at *1–2 (E.D. Mich. Jan. 12, 2012); *Gravelle v. Bank One Corp.*, 333 F. App'x 955, 959 (6th Cir. 2009) (applying the arbitrary and capricious standard where a motion to affirm the administrative decision and a motion for summary judgment were at issue.) "'But the arbitrary-and-capricious standard of review is not a rubber stamp [of] the administrator's decision.'" *Kennard*, 2015 WL 4094611, at *5 (quoting *Cooper*, 486 F.3d at 165).

(ECF No. 38, PageID 1349–50.)

***Both parties' Objections to the R&R are reviewed de novo.***

Pursuant to Federal Rule of Civil Procedure 72(b), the Court will review "de novo any part of the [R&R] that has been properly objected to." *See also* 28 U.S.C. § 636(c) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

"The objections must be clear enough to enable the [Court] to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Accordingly, "[t]he parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation marks and citation omitted); *see also United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981) ("The filing of objections provides the district court with the opportunity to consider the *specific* contentions of the parties and to correct any errors immediately." (emphasis added)). "[B]are disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify any specific errors in the Magistrate Judge's analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections to the R & R." *Alford v. Butler*, No. 18-cv-10466, 2019 WL 2723670, at *1 (E.D. Mich. July 1, 2019) (internal quotation marks and citation omitted).

3

## III. RULINGS

### *The Court overrules Plaintiff's Objection.*

Plaintiff objects to the R&R's finding that:

> Plaintiff does not set forth any specific evidence or allegations of a conflict of interest other than to say Defendant had a financial interest in denying the claim. This does not pass muster under the standard for such a claim, and I suggest any claims of conflict of interest should fail without further support or specificity.

(ECF No. 40, PageID 1371) (quoting ECF No. 38, PageID 1351–52).

To support this Objection, Plaintiff reiterates, mostly verbatim, points she made before Judge Morris. *Compare* (ECF No. 32, PageID 1212–17), *with* (ECF No. 40, PageID 1371–74). She argues that Defendant had a conflict of interest because it "both evaluates and pays the claim[s]" that come before it, and that "[t]he lack of policies and procedures allows Defendant" wide latitude "to deny benefits without a proper review of the record." (ECF No. 40, PageID 1373–74.)

Defendant responds that Plaintiff's "[O]bjection does not identify any evidence that was overlooked" by the R&R. (ECF No. 42, PageID 1387.) It also asserts that, "despite the extraordinary opportunity" Plaintiff had to conduct discovery on Defendant's conflict of interest, she "offered nothing to elaborate on the issue[]" in her motion before Judge Morris. (ECF No. 42, PageID 1386.) And it sums up: "Plaintiff was required to show *how* the 'conflict of interest resulted in an abuse of discretion.' [Judge Morris] properly recognized that Plaintiff had not made such a

4

showing." (ECF No. 42, PageID 1388) (internal citation to *McQueen v. Life Ins. Co.*, 595 F. Supp. 2d 752, 755 (E.D. Ky. 2009) removed).

The Court **OVERRULES** this Objection. To begin with, Plaintiff's Objection fails because it "merely restates the arguments previously presented [and] does not sufficiently identify alleged errors on the part of the magistrate judge." *Austin v. Thompson*, No. 14-12610, 2016 WL 125624, at *1 (E.D. Mich. Jan. 12, 2016); *see also Bialo v. Comm'r of Soc. Sec.*, No. 20-10671, 2021 WL 4350534, at *1 (E.D. Mich. Sept. 24, 2021) ("Plaintiff [] repeats many of the same arguments he made before the Magistrate Judge. . . . [S]uch objections undermine the purpose of the Federal Magistrate's Act, which serves to reduce duplicative work and conserve judicial resources." (internal quotation marks omitted)).

Further, Plaintiff's Objection fails on the merits. As the R&R explained, "[m]ere allegations of the existence of a structural conflict of interest are not enough to show that the denial of a claim was arbitrary; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits." (ECF No. 38, PageID 1351) (quoting *Leppert v. Liberty Life Assurance Co. of Boston*, 661 F. App'x 425, 431 (6th Cir. 2016) (quoting *Jackson v. Metro. Life*, 24 F. App'x 290, 292 (6th Cir. 2001))). Plaintiff suggests that Defendant's lack of written procedures (and auditing) gives it *the opportunity* to improperly weigh its own financial interests

5

when evaluating claims, but she offers no evidence that Defendant *actually did* so when denying her specific claim.

***The Court sustains Defendant's First Objection.***

Defendant Objects to the R&R's conclusion that:

> Because it does appear that Plaintiff's benefits ended on April 19, 2019, it seems that Defendant's determination to terminate benefits, and then to deny benefits, was rational considering the provisions of the Plan— but I cannot state as confidently whether it arose from a deliberate and principled reasoning process.

(ECF No. 39, PageID 1363) (quoting ECF No. 38, PageID 1355).

Defendant states that the "'ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious.'" (ECF No. 39, PageID 1363) (quoting *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1066 (6th Cir. 2014)). And, Defendant continues, "[i]t is only if the court is confident that the decision maker overlooked something important or seriously erred in appreciating the significance of evidence that it may conclude that a decision was arbitrary and capricious.'" (ECF No. 39, PageID 1364) (quoting *Eriksen v. Metro. Life Ins. Co.*, 39 F. Supp. 2d 864, 870 (E.D. Mich. 1999)).

From there, Defendant argues that the R&R "does not identify any information that [Defendant] overlooked or failed to consider, much less how the determination would have been different had additional information been considered." (ECF No.

6

39, PageID 1364.) Defendant insists that the "reasoned explanation for benefits denial was the lapse of coverage." (ECF No. 39, PageID 1365.) And Defendant avers that "[s]eparate questions about why a computer system later sent particular letters had no bearing on the benefits determination and can have no bearing on the Court's review of that determination." (ECF No. 39, PageID 1365.)

Plaintiff responds that "Defendant did not reach a principled and deliberate conclusion as to why it allegedly properly denied Plaintiff's life insurance benefits" because Defendant "relies upon a computer system that erroneously sent out letters" in 2020 to confirm that Defendant sent "the April 2019 lapse notification and grace period letters." (ECF No. 41, PageID 1377–78.) Plaintiff "maintains these lapse notices in 2019 were never received," and she argues that "[t]he errors committed by [Defendant]'s computer system are certainly an issue as there is no way for the administrator to properly use a principled and deliberative reasoning process when reviewing the administrative record and/or its own computer system when there are a serious lack of policies and procedures." (ECF No. 41, PageID 1378.)

The Court **SUSTAINS** this Objection, because Defendant's decision was the "result of a deliberate, principled reasoning process and [was] rational in light of [Mr. Tuttle's] plan's provisions." *Kennard*, 2015 WL 4094611, at *5. The administrative record demonstrates that Defendant denied Plaintiff's claim for the principled reason that its records reflected that Mr. Tuttle's insurance had lapsed on

7

April 19, 2019, due to nonpayment of premiums, and after Defendant had sent Mr. Tuttle grace period letters on February 26, 2019 and March 18, 2019. (ECF No. 13, PageID 150–54, 242–47, 312–13, 699–711, 778–79.) Moreover, this denial was rational in light of Mr. Tuttle's plan's policy that:

> If You are paying under the Payroll Deduction Plan and if the sum of the Cash Surrender Value on any Monthly Anniversary plus the Planned Premiums deducted from Your salary for that month is less than the Monthly Deduction for that month, there will be a Grace Period of 62 days after that anniversary to pay an amount that will cover the Monthly Deduction. We will send You and any assignee on Our records at last known addresses a notice of the Grace Period.
>
> If You are not paying under the Payroll Deduction Plan and if the Cash Surrender Value on any Monthly Anniversary is less than the Monthly Deduction for that month, there will be a Grace Period of 62 days after that anniversary to pay an amount that will cover the Monthly Deduction. We will send You and any assignee on Our records at last known addresses a notice of the Grace Period.
>
> If We do not receive a sufficient amount by the end of the Grace Period, Your Certificate will then end without value.

(ECF No. 38, PageID 1345) (quoting ECF No. 13, PageID 826–27).

Although Plaintiff can and does argue that this language required Mr. Tuttle to *receive* the grace period letters before his insurance plan could expire, it was not irrational for Defendant to interpret it as providing that the plan would expire as long as Defendant *sent* the grace period letters, regardless of whether Mr. Tuttle received

8

them.[1] (In fact, Defendant cites case law that supports this interpretation. *See* (ECF No. 31, PageID 1161–62) (citing *Auxo Med., LLC v. Ohio Nat'l Life Assurance Corp.*, No. 11-cv-259, 2011 WL 5549052, at *6 (E.D. Va. Nov. 15, 2011)).) It was also rational for Defendant to conclude that the lapsed plan was not reinstated by the erroneous 2020 grace period letters, and Plaintiff does not point to any language in the plan (or any other authority) that suggests otherwise.

Finally, Plaintiff's claim that Defendant "overlooked or failed to consider" the error that generated the 2020 grace period letters is unpersuasive. *Eriksen*, 39 F. Supp. 2d at 870. Plaintiff suggests that the 2020 letters came from a computer error, and that this error should have caused Defendant to distrust its entire computer system, including the system's indication that the 2019 grace period letters had been sent—especially given that Plaintiff maintains that she never received those letters. (ECF No. 41, PageID 1377–78.) But Defendant's employees investigated the error and found no reason to believe that it reflected a problem with the system's tracking of outgoing mail. While some employees expressed blanket confusion, others posited that the 2020 letters were sent because Mr. Tuttle's insurance plan was reactivated in the system by forms from his old employer that mischaracterized his employment status. (ECF No. 13, PageID 145–49.) This would be a human error,

---

[1] Because Defendant reasonably relied on evidence that it had sent these letters, the Court need not respond to Defendant's argument that the plan would have lapsed even if it had not sent them.

9

not a computer one. Indeed, the computer system properly recorded the mailing of the 2020 letters—which Plaintiff confirms that she received—in the same way that it recorded the mailing of the 2019 letters. (ECF No. 13, PageID 155–60.) Thus, Defendant considered the 2020 letters and reasonably found that they did not change its conclusions that it had sent grace period letters to Mr. Tuttle in February and March 2019 and that Mr. Tuttle's insurance plan had lapsed in April 2019.

For these reasons, the Court must **AFFIRM** Defendant's Administrative Decision.

Consequently, the Court also **OVERRULES** Defendant's remaining Objections as moot.

## IV. CONCLUSION

For the reasons listed above, the Court:

(1) **OVERRULES** Plaintiff's Objection (ECF No. 40) to the R&R (ECF No. 38) and **ADOPTS** the R&R's Denial of Plaintiff's Motion for Summary Judgment (ECF No. 32);

(2) **SUSTAINS** Defendant's First Objection (ECF No. 39) to the R&R, **OVERRULES** Defendant's other Objections as Moot, and **REJECTS** the R&R's Denial of Defendant's Motion to Affirm Its Administrative Decision (ECF No. 31); and

(3) **GRANTS** Plaintiff's Motion to Affirm Its Administrative Decision.

**IT IS SO ORDERED.**

s/Paul D. Borman<br>
Paul D. Borman<br>
United States District Judge

Dated: May 20, 2022